FILED
2008 Mar 31 AM 09:32
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CANTON

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| WILLIAM LUKE ECKARD AND | ) CASE NO. 07-62268 |
| VICKI LYNN ECKARD, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) MEMORANDUM OF OPINION |
| | ) (NOT INTENDED FOR |
| | ) PUBLICATION) |

On November 1, 2007, the United States Trustee (hereafter "UST") filed a motion to dismiss this case under 11 U.S.C. § 707(b)(3). Debtors William Luke Eckard and Vicki Lynn Eckard (hereafter "Debtors") objected to the motion and requested a hearing. The Court conducted a hearing on January 8, 2008 and thereafter took the matter under advisement. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtors commenced their chapter 7 case on August 2, 2007. Debtors are married and have two children. Debtor William Luke Eckard is an electrical designer with Seifert Tech, where he has been employed for approximately fourteen months as of the date of the petition. Debtor Vicki Lynn Eckard holds a clerical position with Aultman Hospital and has been employed there over seventeen years. Debtors' combined net monthly income on Schedule J is $4,551.00. Their annualized current monthly income on Official Form 22A, Line 13 (hereafter "means test") is $79,860.00. The applicable median income for a family of four in the state of Ohio is $68,890.00. Extrapolating information from the Statement of Financial Affairs (hereafter "SOFA"), Debtors' incomes increased from 2005 to 2006 (in 2005, Debtors earned $65,087.00 and earned $75,558.00 in 2007). From the information on Schedule I and SOFA, Debtors' are on track to earn approximately $73,000.00 in 2007. Debtors' did not claim the filing is the result of a calamity, such as unusual medical expenses, job loss or divorce.

Debtors reside at 3531 Dapplegray St., N.W., Canton, Ohio 44709. They are purchasing the home, valued at $145,000.00 on Schedule A, and owe First Merit Mortgage

a combined total of approximately $151,507.00 on a first and second mortgage on the home, leaving no equity in the home. Debtors reaffirmed both these debts on November 2, 2007.

Debtors' personal property is valued at $65,382.00 on Schedule B. Of this amount, $47,000.00 are retirement funds. Debtors indicate ownership of a 2002 Rockwood pop-up camper, valued at $2,000.00; a 2003 Polaris Sportsman ATV, valued at $3,000.00; a 1999 Dodge Durango, valued at $4,000.00; and a 2001 Dodge Ram valued at $5,500.00. Debtors own the pop-up camper and vehicles free-and-clear; they are purchasing the ATV and owe approximately $1,600.00 on it. The debt on the ATV was reaffirmed on October 9, 2007. Other non-exempt assets include miscellaneous guns valued at $1,125.00. Debtors exempted a total of $2,800.00 in the foregoing personal property. Pursuant to an order dated February 21, 2008, Debtors are compromising the equity in the non-exempt personal property for $7,190.00.[1]

Debtors owe approximately $1,000.00 in federal taxes which appear to be nondischargeable. Their unsecured liabilities as set forth on Schedule F total $51,691.00. Most of the debt (80%) appears to be credit card debt: Best Buy, Cabellas (sic), Discover, Fashion Bug, GM Card, Home Depot, JC Penney, Key Bank, Sams Club, Sams Discover, and St. Joseph's Credit Union. Only two non-credit card debts are listed: tuition to Central Catholic High School of $5,200.00 and a loan from Linda Swihart in the amount of $4,600.00. Debtors' debts are primarily consumer debts.

Debtors list $4,545.00 in monthly expenses on Schedule J. Those expenses are as follows:

| Expense | Amount |
|---|---|
| Mortgage | $1,100.00 |
| Electricity/Heat | 300.00 |
| Water/Sewer | 42.00 |
| Telephone | 100.00 |
| Cable | 130.00 |
| Home Maintenance | 100.00 |
| Food | 800.00 |
| Clothing | 175.00 |
| Laundry/Dry Cleaning | 50.00 |
| Medical and Dental | 75.00 |
| Transportation | 400.00 |
| Recreation | 100.00 |
| Life Insurance | 70.00 |
| Auto Insurance | 143.00 |
| Education (tuition) | 450.00 |
| Real estate taxes | 100.00 |
| IRS | 100.00 |
| Polaris ATV | 160.00 |
| Second Mortgage | 150.00 |

---

[1] Debtors are paying $200.00 per month, plus all state and federal income tax refunds, to the chapter 7 trustee until the amount is paid in full.

Deducting these expenses from Debtors net income, Debtors show $6.00 of monthly net income.

After completing the means test, Debtors' filing did not demonstrate a presumption of abuse. Although UST does not agree with this finding, and filed a Statement of Presumed Abuse on October 5, 2007, the UST is not pursuing a motion to dismiss.[2] Debtors claimed the following expenses on the means test:

| | |
|---|---:|
| National Standard for food, clothing, etc. | $1,546.00 |
| National Standard for housing, utilities, etc. | 421.00 |
| Local Standard for vehicle operation (2 or more vehicles) | 558.00 |
| Local Standard for vehicle ownership (#1) | 471.00 |
| Local Standard for vehicle ownership (#2) | 332.00 |
| Other Necessary Expense: taxes | 1,583.00 |
| Other Necessary Expense: mandatory payroll deductions | 54.00 |
| Other Necessary Expense: life insurance | 38.00 |
| Other Necessary Expense: telecommunication services | 130.00 |
| Health Insurance, etc. | 223.00 |
| Continued Charitable Contributions | 11.00 |
| First Merit Mortgages | 1,255.00 |
| Payments on Priority Claims | 16.67 |

## LAW AND ANALYSIS

The United States Trustee seeks dismissal of this case under 11 U.S.C. § 707(b)(3). According to the UST, the totality of the circumstances indicate that Debtors are attempting to abuse the bankruptcy system through their continued payment of non-essential or luxury items, like private school tuition and an ATV, at the expense of the unsecured creditors. In response, Debtors stand by their budget and rely heavily on the fact that no presumption of abuse arose under the means test.

As previously stated, the statutory provision governing this dispute is section 707(b)(3). That section of the Bankruptcy Code provides, in applicable part:

> (b) (1) After notice and a hearing, the court, on its own motion or a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the

---

[2] The UST objects to the Court permitting debtors to take an expense deduction for lines 23 and 24 of the means test when debtors own the vehicles free and clear. The Court decided this issue in In re Johnson, No. 06-61902 (Bankr. N.D. Ohio July 23, 2007).

provisions of this chapter.

\* \* \* \* \*

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--

(A) whether the debtor filed the petition in bad faith; or;

(B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

UST proceeds under 707(b)(3)(B), alleging that the totality of the circumstances demonstrate abuse. In order to succeed on its motion, UST carries the burden of persuasion by a preponderance of the evidence. *See* In re Beckerman, 381 B.R. 841 (Bankr. E.D. Mich. 2008); In re Gonzalez, 378 B.R. 168 (Bankr. N.D. Ohio 2007) (citation omitted).

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (hereafter "BAPCPA"), the Bankruptcy Code called for dismissal of a debtor's case on the basis of "substantial abuse." BAPCPA eliminated the world "substantial" from the statute. Although courts employ the same analytical framework in reviewing BAPCPA motions to dismiss as they did in pre-BAPCPA section 707(b) motions to dismiss, courts acknowledge the legislative intent to lower the standard for dismissal. *See, e.g.,* In re Mestemaker, 359 B.R. 849 (Bankr. N.D. Ohio 2007); In re Zuccarell, 373 B.R. 508 (Bankr. N.D. Ohio 2007). While courts may struggle with determining where the line between "substantial abuse" and "abuse" resides, the basis of a finding of abuse is still preeminent in a court's review.

The Sixth Circuit Court of Appeals, in addressing the then-newly formulated section 707(b), advised that 'dismissal for substantial abuse is intended to "uphold[] creditors' interests in obtaining repayment where such repayment would not be a burden."' In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989) (citing In re Kelly, 841 F.2d 908, 914 (9th Cir. 1988) (quoting S.Rep. No. 65, 98th Cong.., 1st Sess. 53, 54 (1983)). With this foundation, the Sixth Circuit concluded that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." Krohn at 126. The same standard has been repeatedly applied by bankruptcy courts reviewing BAPCPA motions to dismiss. *See, e.g.,* Beckerman, 381 B.R. at 844; In re Edighoffer, 375 B.R. 789 (Bankr. N.D. Ohio 2007); In re Carney, 2007 WL 4287855 (Bankr. N.D. Ohio 2007) (unpublished). Thus, the Court reviews the "totality of the circumstances" to determine whether Debtors' filing should be dismissed for either dishonesty or a lack of need.

Although the Sixth Circuit acknowledged that it could not articulate all of the factors that could be relevant to the inquiry for lack of honesty, it did specifically mention

that "good faith and candor in filing schedules and other documents," a pattern of "engag[ing] in 'eve of bankruptcy purchases,'" and whether the debtor was "forced into Chapter 7 by unforeseen or catastrophic events" as points of consideration. Krohn, 886 F.2d at 126. To the extent UST seeks dismissal under the premise of Debtors' dishonesty, the Court denies such relief. There is no indication that Debtors have been dishonest in their petition and schedules or that they irresponsibly or recklessly made purchases immediately prior to filing the bankruptcy. Notwithstanding the fact that Debtors' bankruptcy filing was not predicated on a catastrophic event, the Court finds that the balance of the circumstances of Debtors' filing do not rise to the level of dishonesty warranting dismissal.

Remaining for consideration is whether Debtors are needy: does Debtors' "financial predicament warrant the discharge of [their] debts in exchange for liquidation of assets[?]" Behlke v. Eisen (In re Behlke), 358 F.3d 429, 434 (6th Cir. 2004) (citing 4 Collier on Bankruptcy ¶ 707.07 at 707-20 (15th ed. 1989)). The chief factor, and the factor which can ultimately decide the issue, is whether a debtor will have an "ability to repay his debts out of future earnings." Krohn, 886 F.2d at 126.

> Other factors relevant to need include whether the debtor enjoys a stable source of income, whether he is eligible for adjustment of his debts through Chapter 13 of the bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Id. UST argues that Debtors are not needy based upon alleged extravagances in their budget which, if trimmed, would result in the ability to repay a portion of their debts.

In its brief, UST targeted the following budgeted expenses: $450 per month for private school educations for their sons; $160 per month for an ATV, and $100 for recreation. Debtors argue that $100 per month for recreation is roughly $25 per week, a minimal amount for a family of four. Debtors point out that they "passed" the means test and are making some payments to unsecured creditors by way of the compromise with the chapter 7 trustee. As a result, Debtors urge the Court to find that dismissal is not warranted.

I.   *Ability to pay from future earnings/Reduction of expenses*

In Behlke, the Sixth Circuit stated that one way to "determine a debtor's ability to pay is to evaluate whether there would be sufficient disposable income to fund a Chapter 13 plan." Behlke, 358 F.3d at 435 (citations omitted). "Disposable income is defined as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of a debtor or a dependent of the debtor." Zuccarell at 511 (citing In re Pier, 310 B.R. 347, 353 (Bankr. N.D. Ohio 2004)). The Court finds that Debtors do have disposable income with which to fund a chapter 13 plan and therefore have the ability to pay at least a portion of their debts with future earnings.

First, Debtors have indicated an ability to repay at least a portion of their debts through the compromise with the chapter 7 trustee. Debtors agreed to pay $200 per month to retire a $7,190 obligation to the trustee. Without the addition of any tax refunds, it will take thirty-six payments to satisfy the debt.

Second, Debtors appear to be attempting to maintain the lifestyle which precipitated the bankruptcy filing. First, they reaffirmed two mortgages on a home that is, by their own figures, slightly under water. Those payments total, as set forth in the reaffirmation agreements to FirstMerit Mortgage, $1,199.14,[3] excluding taxes and insurance. The local housing standard for a family of four in Stark County, Ohio is $839. The local standard for non-mortgage expenses for a family of four in Stark County, Ohio is $421. By comparison, Debtors are spending $300 for electricity/heat, $42 for water/sewer, $130 for cable, and $100 for home maintenance and repairs, for a total of $572. The Court does not hereby urge blanket adoption of the standards utilized in the means test, but merely references them "as a pole for guidance . . . [which] can be helpful when determining the reasonableness of a debtor's expenses under § 707(b)(3)." Gonzalez, 378 B.R. at 175.

The Court does point out that, when looking at the means test standards, Debtors are spending less than the national standard for food, clothing, household supplies, personal care, and miscellaneous. In their case, the means test allows them $1,546 as the standard deduction. Including their allotment for recreation, Debtors are spending only $1,125[4] per month in this area. As a result, Debtors have skimped in some areas (approximately $400 per month) to be able to fund other areas.[5] As a general principle, the Court does not have a problem with debtors tweaking one budget area to allow for more expense in another. This is not unacceptable *per se*. Debtors in this case could

---

[3] The Court notes some confusion about the mortgage expenses. Debtors claim $1,100 on Schedule J for the first mortgage and state that real estate taxes are include but home owners insurance is not. However, a few lines down they deduct $100 per month for real estate taxes but do itemize any deduction for homeowners insurance. The payment on the second mortgage is listed as $150 per month. Thus, the mortgages total $1,250 but Debtors reaffirmed just under $1,200.

[4] Food: $800; Clothing: $175; Laundry and Dry Cleaning, $50; Recreation: $100.

[5] In this case, the problem is amplified by the fact that Debtors claim the vehicle ownership expenses on the means test, which this Court allows, yet have no car payments. Thus, the means test has an additional $803 for expenses which Debtors devote to other areas of the budget on Schedule J. While the Court is not promoting lavish expenditures on cars, and actually commends Debtors for not adding vehicle payments to their financial woes, this is yet another illustration of how Debtors are funding the house payments, private school tuition and multiple entertainment expenses (ATV, cable, recreation).

have reasonably used that money to fund another area, such as the private school tuition.[6] The problem is that Debtors want to fund the private school tuition, keep the house, pay off the ATV, pay $130 a month for cable, and have $100 a month for recreation. Looking at the totality of the circumstances, the Court finds that Debtors have some ability to repay debts out of future earnings by making adjustments to their budget while still allowing them "adequate food, clothing, shelter, and other necessities." Krohn, 886 F.2d at 127; *see also* In re Carney, 2007 WL 4287855 (Bankr. N.D. Ohio 2007) (citations omitted) (unpublished).

Finally, with great trepidation, the Court notes that although Debtors listed the ATV repayment to be $160 per month on Schedule J, the payment reaffirmed by Debtors is $50 per month. (Reaffirmation Agreement, dkt. 13, filed Oct. 9, 2007). While the Court vehemently opposes any suggestion that chapter 7 debtors should not undertake to negotiate favorable reaffirmation agreements, in this particular case, the lower payment is meaningful because it clearly provides Debtors with $110 more in monthly net income irrespective of any other adjustments which could be made. Similarly, Debtors listed a $100 expense for the payment of IRS taxes of totaling $1,000. If Debtors actually made these payments, the debt is nearly fully paid, and more of their future earnings will be available to repay some portion of their unsecured debt.

## II. Stability of income

Debtor William Luke Eckard had been employed with his current employer for slightly more than one year. At the hearing, counsel suggested that there had been a job loss for Mr. Eckard, but the earnings reported in the SOFA do not indicate that Debtor was subject to a decrease in pay or a long-term period of unemployment. Thus, the Court cannot conclude that Mr. Eckard's income is unstable. Mrs. Eckard has been employed with the same employer for over seventeen years, so any suggestion of instability in her income would be dubious. Therefore, the Court concludes that Debtors enjoy a stable source of income with no foreseeable changes.

## III. Chapter 13 eligibility

Debtors' debts are below the chapter 13 debt ceilings, making them eligible for Chapter 13 relief. *See* 11 U.S.C. § 109(e). As outlined above, it also appears that Debtors have disposable income with which to fund a plan.

While Debtors are eligible, the Court does ponder whether Chapter 13 is truly a viable option. First, the Court is cognizant that this is not a case where there is a

---

[6] At the hearing, UST abandoned its arguments related to the private school tuition and instead chose to focus on the recreational expenses. The Court notes that Congress, through the addition of 11 U.S.C. § 707(b)(2)(A)(ii)(IV), provided room for the allowance, in limited circumstances, of private school tuition expenses. As a comparison only, Debtors' expense for tuition exceeds the ceiling set by Congress.

significant "fiction" involved in the means test.[7] The Court also acknowledges that Debtors are driving a 1999 Dodge Durango and a 2001 Dodge Ram which they own free and clear. These vehicles will not last forever and at some point will begin to require larger and larger sums for maintenance and upkeep or replacement. Debtors' budget does not provide for these types of expenses. The Court does not want to foster a system where a debtor spends five years in a chapter 13 plan to get out of debt only to exit chapter 13 with an immediate need to finance a vehicle. However, the Court cannot ignore the fact that these above-median debtors incurred $50,000 in unsecured debt, apparently without care or consideration for either their future transportation needs or their creditors. Are these the archetypal "honest but unfortunate debtors?" *See* Grogan v. Garner, 498 U.S. 279, 286 (1991). Honest, yes. Unfortunate? Only by their own pattern of self-indulgence.

Another consideration is whether the creditors will actually benefit more from a chapter 13 plan. Under the current compromise, Debtors are paying the trustee $7,150, representing fourteen percent of their unsecured claims. If Debtors disposable income is $200 per month, a sixty month plan will yield only $2,400 more, or approximately eighteen and a half percent.[8] Is four and a half percent enough to warrant dismissing this case? In a different case, the Court mind answer this question in the negative, but based on the totality of circumstances, the Court answers it in the affirmative in this case.

*IV.    State Remedies/Private Negotiations*

Neither party provided any arguments either for or against the existence of state remedies available to Debtors or whether Debtors could successfully negotiate a way out of their financial situation. Additionally, as set forth on Debtors' certificates of credit counseling, no debt repayment plan was prepared on behalf of Debtors. *See generally* 11 U.S.C. §§ 521(b)(2) and 109(h). Consequently, this factor tends in favor of Debtors.

## **CONCLUSION**

When the totality of the circumstances indicate that a debtor has been dishonest, or is not needy, a court is authorized to dismiss the case as an abusive filing under 11 U.S.C. § 707(b)(3). In this case, dishonesty is not at issue, but the UST argues that Debtors are not truly needy because trimming excesses from their budget would result in an ability to repay some of their debt. The Court agrees. Debtors' budget shows multiple expenditures in excess of the standards utilized in the means test. Additionally, some of the expenses in the budget are either not reasonable or subject to reduction. Consequently, Debtors have disposable income with which to fund a chapter 13 plan. Further, Debtors' enjoy a stable source of income in excess of the median family income. The sum of these facts shows that Debtors have an ability to repay a portion of the debt which negates their neediness. As a result, the Court concludes that Debtors' filing is an

---

[7] An example is where a debtor claims a mortgage expense for a house that is being surrendered. *See, e.g.,* Edighoffer, 379 B.R. 789; Zuccarell, 373 B.R. 508.

[8] The Court has not accounted for trustee fees and expenses under either chapter 7 or chapter 13.

abuse of the bankruptcy system.

An order shall be entered immediately.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List**:

John H Hornbrook
1400 N Market Ave
Canton, OH 44714-2608

Linda M. Battisti
Office of the US Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, OH 44114-1240